WILLIAM H. PLYER, Appellant, *v.* GERMAN AMERICAN INSURANCE COMPANY OF THE CITY OF NEW YORK, Respondent.

*Court of Appeals, June 10, 1890.*

Reversing 48 Hun, 618, Mem.

1. *Witness. Impeachment.*—While contradictory statements made out of court are admissible in evidence for the purpose of impeaching the credibility of the witnesses who made them, the impeachment has not the slightest effect upon the testimony of the other witnesses who swear to the same facts, and who stand entirely unimpeached and uncontradicted either by witnesses or circumstances, and whose evidence is plausible, natural and probable, and not given by an interested witness ; nor are such statements evidence of the facts therein stated.

2. *Trial. Charge.*—Where, in an action on a policy of insurance written upon a vessel, containing a condition that she should be in charge of a watchman, this fact was testified to by several witnesses other than the

plaintiff, none of whom were in any way impeached or contradicted nor was there anything in the least degree incredible, improbable or unnatural in the evidence of either, but two or three other witnesses, who testified to the same fact, had previously signed statements that there was no watchman, the plaintiff was entitled, on request, to a charge that the fact that there had ·been a watchman in charge of the vessel at the time of the fire, had been conclusively proved and was not open to any question by the jury.

Appeal from a judgment of the general term of the supreme court, affirming a judgment entered upon a verdict, and an order denying a motion for a new trial.

*T. C. Campbell*, for appellant.

*Wm. D. Murray*, for respondent.

PECKHAM, J.—The counsel for the plaintiff asked the court in substance to charge the jury that the fact of there being a watchman in charge of the vessel at the time of the fire had been conclusively proved and was not open to any question by them.

Conceding that it was a condition precedent to a recovery that the plaintiff should prove the fact, we think the evidence on that point stands so wholly uncontradicted that the court erred in its refusal to charge as requested.

The learned judge, in his charge to the jury, evidently regarded the fact as uncontradicted, for he stated, " If you believe that there was no watchman in charge there ( but upon that branch of the case I fail to see any evidence to contradict the plaintiff's testimony that Otley was there, and that he was a watchman, and that he had charge of these boats, although I submit it to you as a fact ), if you find there was no watchman, or that the vessel was beached, then your verdict would be for the defendants."

The evidence as to the watchman was not given by the plaintiff, but was given in his behalf by Matthew H. Gregory, the person who had been engaged in making the repairs on

the dredge, and who himself engaged Otley as a watchman in charge of the vessel. The fact was also proved by George Gregory, the son of Matthew H., a young man about eighteen years of age, who testified positively that there was a watchman at his father's yard and premises to watch the vessel during the time spoken of, which included the time up to the occurrence of the fire.

John Muller also said that he was shown the watchman by Gregory, but exactly when he could not say, although it was while the dredge was lying at Gregory's place before the fire. None of these witnesses were in any way impeached or contradicted, nor was there anything in the least degree incredible, improbable or unnatural in the evidence of either. There was no circumstance in the case which might be called contradictory, or suspicious even, in its nature, unless the mere fact of the occurrence of a fire is suspicious. The judge charged the jury that it was not necessary for the watchman to be on board the vessel in order to comply with the terms of the policy. He said that if the watchman were there at the yard of Gregory, taking care of the vessel, exercising dominion and control over it, and watched it, then it would be for the jury to say whether, under the circumstances, that was not a compliance with the provisions of the policy. Hence the mere fact of the happening of a fire on the vessel would lead to no inference as to the absence of a watchman, for a fire might easily occur and not be seen for some time by a watchman engaged on shore in the manner permitted by the policy, as interpreted by the learned judge and as we think correctly. The evidence is also uncontradicted that the vessel was worth from $7,500 to $12,000 after the repairs had been put upon it. Mr. Gregory says that Stratton, the surveyor for defendant, after he had examined the vessel for insurance (which was subsequent to the period when the repairs had been made) said that he was favorably disposed for insurance, and that the dredge was worth $10,000. This evidence was not contradicted by Stratton. He said

that he knew when he examined the dredge the first time she had been repaired and overhauled; he noticed her very closely and went all over her.

The evidence that the plaintiff purchased the vessel at public auction from the naval department of the government for $700, prior to the repairs did not discredit the affirmative evidence as to her value subsequent to the repairs, and which was, as I have stated, wholly uncontradicted. With full knowledge of the condition and value of the vessel obtained from its own special surveyor, after a particular and full examination, the defendant insured her for $6000.

There is in truth nothing in the case upon which to hang an inference or a suspicion that the plaintiff would profit by the loss of the vessel and the collection of the $6000 of insurance, which he had placed upon it, nor is there any improbability of the entire truth of the evidence of the Gregorys upon the question of the watchman.

There was no evidence as to the watchman given by the defendant, and nothing to obstruct the application of the general rule that a fact thus proved and under such circumstances must be taken by the jury, unless the defendant's reasons, which will now be given, furnish a sufficient answer.

The counsel for the defendant says that the witnesses, Matthew Gregory and his son George, are interested and their credibility impeached, and their statements are improbable. The credibility of Matthew is impeached, as is claimed, by contradictory evidence on the part of defendant. I think there is no substantial contradiction. In his cross-examination Matthew Gregory stated that when Stratton, the defendant's surveyor, came to Cow Bay to look at the dredge for the purpose of reporting to defendant on the subject of an insurance on it, his (Gregory's) bark " Hoppit " was in front of his yard and remained there up to the time of the fire on the plaintiff's dredge, and the " Hoppit " was a little to the south of the buildings in his yard, perhaps 100 feet,

and in the neighborhood of 700 feet out from the shore at high water mark, and low water mark would leave the "Hoppit" almost aground, so that at times one could walk out there. The surveyor of the defendant (Stratton) was subsequently called, and in the course of his testimony he said he thought there was no such distance between high and low water mark as 700 feet, and that it was not, as he thought, in an ordinary tide more than 200.

The fact as to the precise number of feet was totally unimportant; and was a mere estimate on the part of both witnesses, and a difference of opinion on an immaterial question cannot be said to furnish the basis, within the facts of this case, for an attack upon the credibility of either witness, nor is it a contradiction of a nature required by the rule in question. As to what condition the dredge was in when the water was at the high or low tide, or when it was slack water, these two witnesses are not in the least at variance.

The other alleged contradiction consists in the fact that Gregory, in his evidence, testified that Stratton, the surveyor, said upon the same occasion when he came down to look at the dredge before she was insured, "If Mr. Plyer effects an insurance on this vessel, we want it to lay at anchor, separate from this hulk (the bark "Hoppit"), my store ship, which I take a vessel alongside of to repair, to do anything to."

Stratton says, "I made no request of Gregory to have the position of the dredge changed. I had no right to."

Gregory had not said that Stratton had requested him (Gregory) to change or have changed the position of the dredge. It was a mere observation that if Plyer effected the insurance, the defendant would want the dredge to "lay at anchor separate from the 'Hoppit.'" This was no contradiction. There is no claim made that the fire occurred because the "Hoppit" was alongside of the dredge, nor is there the slightest pretense that it occurred through any change or failure to change the position of the dredge with

reference to the " Hoppit." The difference, if there be a difference between the two witnesses, does not rise to the force or importance of a contradiction in their testimony.

But it is further stated that the witnesses Gregory were interested. If it be meant that either was interested pecuniarily in the event of the suit, there is not the slightest evidence of the fact, but on the contrary the proof was that the plaintiff was the sole owner of the vessel, and the judge charged the jury that upon the evidence the fact must be taken that no one but the plaintiff had any interest, as the proof showed that the plaintiff was the owner, and there was no evidence to contradict it. It is true Gregory, the father, had made repairs upon the vessel to the extent of $3052.35, for which he had rendered a bill, upon which plaintiff had paid him about $2600.

There was no evidence that plaintiff was not entirely good for the balance and able to pay it whenever called upon, nor was there any evidence that the witness did not so regard him. In truth the claim of any interest on the part of the Gregorys is wholly unsustained. There was no proof of any special intimacy or friendship existing between them and the plaintiff, nor anything to rouse the most suspicious as to any relationship of a special or confidential character between them. The evidence of the son, it will be remembered, is not open even to the slight charges of contradiction or interest which are made against the father.

But there are some other facts which the defendant's counsel thinks are important, and which will be now stated. Soon after the fire which destroyed the dredge, Mr. Stratton, in the interest of the defendant, came down to the place where the dredge had been lying when the fire broke out. He conversed with men named respectively McGinty, Brown and Runde, and reduced their statements to writing, and had them sign the same. These men then

were or had been in the employment of Gregory when the fire occurred. According to the statements thus signed by them, there was no watchman in charge of the vessel when it was burned, as Otley, the man who paintiff claimed was the watchman, was referred to by them as being asleep in the house with them at the time when the fire was discovered.

The defendant then took proceedings to have their testimony taken *de bene esse* before a referee, and on their examination before a referee, in answer to questions put by plaintiff's counsel, they all swore distinctly to the presence of the watchman at the fire, and to their first seeing him near it. McGinty, in explanation of this contradiction between his prior statement to Stratton and his testimony thus taken, said he did not know the contents of the paper. Runde said he did not know whether he told the same story in the paper that he did on his (then) examination, but he meant to ; while Brown said he knew nothing of the contents of the paper signed by him, except as it was read to him, and he did not think the paper as read to him was different from the facts as he stated them on the examination then had before the referee.

The plaintiff, upon the trial of the action, called the witnesses Joseph McGinty and Abraham Brown, and they swore to the presence of the watchman, and, as Runde was not present at the trial, his testimony taken *de bene esse* at the instance of defendant, was put in evidence by the plaintiff.

For the purpose of impeaching these three witnesses, the defendant's counsel offered their written statements, signed by them, and already referred to, showing contradictory statements made by them to their evidence in court on the trial. These statements were received, and undoubtedly were properly received, for the purpose mentioned. I have now stated all the evidence which was given upon the question of the watchman when the plaintiff rested. The defendant produced no evidence upon that point.

We think that the written statements offered in evidence by the defendant were admissible only for the purpose of showing prior contradictory statements made out of court by the witnesses named, and to that extent their statements furnished ground for the contention that those witnesses who had made the statements were so far impeached as to leave their credibility a question for the jury. These written statements were not, however, any evidence of the fact of the absence of the watchman at the time of the fire. They did not constitute even a suspicious circumstance, so that it could be said that the case was of so suspicious a nature that the uncontradicted evidence of other and disinterested witnesses must still be submitted to the jury to pass upon the credibility of such witnesses. Their only effect was upon the testimony of the witnesses who had made them, and they cast a doubt on that evidence simply because the sworn and the unsworn statements disagreed, and it was for the jury to say whether the sworn statement made in court was or was not true. It might well be that it was, and the falsity might rest with the unsworn documents, or the explanation of the witnesses might be taken as sufficient. This would be matter for the jury to consider.

All this of course is on the assumption that there was no other evidence of the fact. The character of the other evidence, if any existed, would not, however, be impeached or its weight lessened by these statements. They formed not the slightest contradiction to the evidence of the Gregorys or of Muller, nor did they constitute the least ground for saying that the credibility of these last named witnesses had been in any degree assailed. If, on the trial, the witnesses who made these written statements had said that there was no watchman present when the fire broke out, or if they had given evidence of such facts that an inference to that effect might be properly drawn from their evidence, then, of course, there would have been evidence in the case which affected the credibility of the other witnesses, or, at

any rate, contradicted them, and the case on that point would, therefore, have to be left to the jury. But there is nothing of the kind here.

What was done was no more than if witnesses had been called to swear they would not believe McGinty and his two companions under oath. That certainly would not affect the credibility of the other witnesses who were not impeached. It was simply one of the ways of impeaching these particular witnesses, and the impeachment had not the slightest effect upon the testimony of those witnesses for the plaintiff who stood entirely unimpeached and uncontradicted either by witnesses or circumstances, and whose evidence was plausible, natural and probable, and not given by an interested witness. The cases cited by the counsel for the defendant to sustain his contention, viz.: Elwood *v.* Telegraph Co., 45 N. Y. 553; Gildersleeve *v.* Landon, 73 Id. 609; Koehler *v.* Adler, 78 Id. 287; Munoz *v.* Wilson, 111 Id. 295; 19 N. Y. State Rep. 372, and cases therein cited, do not go far enough. There are no facts or circumstances proved here which bring the case within the rule permitting the credibility of witnesses who were uncontradicted by any other witness to be passed upon by the jury because of a possible contradiction from circumstances proved in the case. None such existed here.

Upon all the evidence in this case we think it comes within the doctrine laid down in Lomer *v.* Meeker, 25 N. Y. 361, and Kelly *v.* Burroughs, 102 Id. 93; 1 N. Y. State Rep. 161, and other kindred cases, and that the plaintiff was entitled to the charge he asked for. This leads to the reversal of the judgment and to the granting of a new trial, with costs to abide the event.

RUGER, Ch. J., GRAY and O'BRIEN, JJ., concur; ANDREWS, EARL and FINCH, JJ., not voting.